GUILLERMINA CRUZ, Plaintiff and Appellant, v. HEIRS OF PABLO LANDRAU DÍAZ ET AL., Defendants and Appellees.

No. R-64-46.      Decided June 27, 1969.

---

564

*Samuel R. Quiñones, Santiago Polanco Abréu, Guillermo S. Pier-luissi*, and *Walter Pierluissi* for appellant. *Félix Ochoteco, Jr.*, and *Juan R. Correa Toledo* for appellees.

Second Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Dávila, and Mr. Justice Torres Rigual.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

This is an action for division of community of property. Plaintiff-appellant, Guillermina Cruz, and Pablo Landrau Díaz, appellees' predecessor, lived in concubinage since 1910, being both single and very young. During that concubinary relation, which until January 2, 1922 was *more-uxorio*, they begot 6 children, all recognized by their father. In his marriage Pablo Landrau begot three other children.[1]

---

[1] According to the will under which Pablo Landrau died, executed on June 28, 1957, he left one-third of the hereditary estate—*legítima corta*—to his nine children on equal parts subject to the widow's usufructuary

■ After his marriage in 1922 the concubinary relation between Guillermina Cruz and Pablo Landrau continued at least until 1951, though it ceased to be that *more-uxorio* marital life—in the form of marriage—that existed before he married. Appellant herself in her testimony did not seek to establish that during this second stage of her relationship with Pablo Landrau she worked or contributed in the effort to increase the property of the latter. That being the position of appellant herself, the problem in this case boils down to determine whether or not appellant owned in common with Pablo Landrau the property they accumulated during their marital union and life together, which to those effects did not extend after his marriage.

The following are undisputed facts, and it was thus concluded by the trial court, that at the beginning of this concubinary relation or marital union, Pablo Landrau was the owner of an undivided share equivalent to 9 cuerdas in a property of a larger area belonging to his family and he was also the owner of a small business with approximately $600 worth of stock. In the humble back room of this small business, somewhat enlarged at the time the children were born, they established their home and they lived as man and wife until they acquired a house in Santurce and went to live there a little while before his marriage. Their sixth and last child was born in this second home.

It is also an unquestioned fact, accepted by the parties and concluded by the trial court, that during that period from 1910 to 1922 the following property was acquired through purchase, though the acquisitions appear to have been made in the name of Pablo Landrau only:

(a) 18 cuerdas of land acquired from his sisters for the

share, he left all the other third of the legal portion only to his children begotten in his marriage, and he left all the one-third of the free portion to his widow. .

amount of $1,500, according to deed No. 47 before Notary Ignacio Morales Acosta, executed on June 14, 1916;

(b) a property of 52.961 cuerdas acquired for the price of $7,954.16 by deed No. 7 before Notary Ramón S. Pesquera, executed on July 18, 1918;

(c) a property of 9 cuerdas for $1,500 by deed No. 79 executed on June 4, 1917 before Notary Francisco Soto Gras;

(d) 6.38 cuerdas acquired for $200 according to deed No. 32 of July 8, 1915 before Notary Adrián Acosta Abadía;

(e) house and lot in Santurce, acquired on August 22, 1921 for $2,200.

The trial court concluded, as a matter of fact, that "there was never a tacit or express agreement between Pablo Landrau and Guillermina Cruz to work together and divide among them, the profits in any proportion." The court did not believe appellant's testimony to the effect that at the beginning of the relationship, she contributed $400 of savings from her house. It concluded that during the years they shared the same roof, the duties of plaintiff were those of a housewife and that any additional work she performed was sporadic depending on the time she had left after taking care of the house chores and the raising of her children. Notwithstanding the foregoing, it left without deciding the question of her work, as we shall see.

The court accepted that the evidence sought to establish that appellant performed other activities besides her duties as housewife. As a matter of fact, the evidence is convincing to the effect that appellant contributed with constant work and effort in activities leading to the increase and improvement of the economical condition of that marital relation.

We have been considering for many years the problem of the disposition of the proprietary rights resulting during the course of a concubinary relation—in this case from a union or marital relation without being married. One of our first statements appeared when in *Correa* v. *Quiñones*, 29 P.R.R.

47, decided in 1921, we admitted that there was sufficient allegation of adverse title so as to thwart an action of unlawful detainer; an alleged right of ownership of the defendant therein on the house from which they wanted to evict him, before an evidence which showed that the house had been constructed while said defendant lived in concubinage with plaintiff and with the funds belonging to both. We stated then:

"Concubinage cannot of itself create any right of any kind as regards the persons living in such a condition, and of course concubinage cannot originate a legal conjugal partnership; but leaving aside the matter of concubinage entirely, the defendant denies that he is in possession at sufferance of the part of the house sued for and alleges that the house belongs in *common* to both parties because it was built with the funds of both, and that he occupies the part sued for by virtue of an agreement entered into between them upon terminating their community life. This allegation is not without some show of evidence; therefore an action of unlawful detainer does not lie. . . ."

After the *Correa* case, in *Morales* v. *Cruz*, 34 P.R.R. 796, decided in 1926, we faced the problem in a more direct manner. There is a great deal of similarity of facts between those set forth in the *Morales* case, concerning the concubinary relation, and those of the case at bar. That case dealt with an action praying that it be adjudged that the concubine was the owner of a moiety of certain undivided property described, acquired during the concubinage. We stated then: (p. 799)

"In reality the evidence did not support the formation of a universal partnership between the plaintiff and Avelino Cruz. Hence the new theory of the amended complaint of making the cause of action dependent upon the illicit relations of concubinage, and the specific allegation that the plaintiff is the owner of half of each and all of the properties described because 'they were acquired while she was living with Avelino Cruz y Toro, she having contributed to their acquisition with her work, her economy, her cooperation and her means.'

"Then it may be asked whether the said allegation is sufficient to constitute a cause of action, this being the first assignment of error that the appellant argues."

Concluding that the complaint was not sufficient to state a cause of action, we said: (p. 804)

"If we should assume that the present case is one to which the principles of equity developed in the cases examined could be applied, yet there does not appear from the terms of the amended complaint any allegation that refers to the existence of any agreement or universal partnership of ganancial property entered into between the plaintiff and the deceased independently of their living together or the sexual relations which they maintained during the period of years mentioned. The right of the plaintiff in the property, if any, is made to depend upon their illicit relations, for it is essentially alleged that the plaintiff is the owner of half of the said property 'because it was acquired while she was living with Avelino Cruz y Toro.' No importance can be given to the additional words, 'she having contributed to its acquisition with her work, her economy, her cooperation and her means,' inasmuch as the mere fact that the property was acquired by the mutual work and expenditures of the parties while living together will not create a partnership or community of interests in the property in the absence of an agreement that the parties would share in the ownership of the property. [citation]

"Therefore, we have reached the conclusion that the complaint is not sufficient to state a cause of action."

After summarizing the evidence presented in the case, we continued: (p. 807)

"The evidence of the defendant, on the other hand, tended to establish clearly that Cruz possessed some personal and real property before beginning his illegal union with the plaintiff; that this status was pre-existent to the development and increase of the business and property of Cruz, and that the cooperation and work of the plaintiff to which the complaint refers was merely incidental to her duties as concubine."

In the case at bar the trial court assumed a similar position on its conclusions of law.

Considering that as of 1922 Pablo Landrau had possessed the property as sole owner absolutely excluding appellant, uninterruptedly for more than 30 years, reason why the court understood that it was proper to set up the extraordinary prescription of 30 years defeating thus the cause of action, the court expressly stated that it was not necessary to determine whether the tasks performed by Guillermina Cruz were merely incidental to the concubinary relation or whether, on the contrary, they were a contribution of such a nature as to give her the right to a share in Landrau's property. In the light of the record, and considering the contentions which follow, we decide that she was entitled to share said property.

■ If the rules governing today, and at the time when the court decided the case were the same as those stated in *Morales* v. *Cruz*, aforecited, it would be proper to affirm the judgment, without more. But those views do not govern. In *Torres* v. *Roldán*, 67 P.R.R. 342, decided in 1947, we faced the problem with broader and more comprehensive views. It dealt, as in the case at bar, with a suit for division of property owned in common and where there had existed a concubinary relation during the course of which said property was acquired. The then District Court dismissed the action on motion for dismissal on the ground that there was no cause of action. This Court said upon reversing the judgment: (p. 343)

"A conjugal partnership is created by operation of law in this jurisdiction only by marriage; a community interest in property therefore cannot be predicated solely on concubinage. [citations]

"However, if a man and woman living in concubinage agree, expressly or impliedly, that they will pool their earnings and share equally the ownership of property purchased therewith, the courts will require the party retaining more than his share as provided in the agreement to disgorge the same. [citations]"

We did not stop there. Right after we said the following:

"Moreover, *even in the absence of such an express or implied agreement,* in order to avoid unjust enrichment of the defendant, the plaintiff is entitled to share in the property jointly accumulated, in the proportion that her funds contributed toward its acquisition. [citations]" (Italics ours.)

Referring then to the *Morales* case, we said: (p. 345)

"But although not so clear as it might be, the opinion in the *Morales* case seems also to hold at p. 804 that a concubine may not recover, in the absence of an agreement, her proportionate share of property *even if she contributed specific capital and labor toward its purchase price.* In view of the foregoing, *this last holding, if it be such, is overruled.*" (Italics ours.)

In *Pérez* v. *Cruz,* 70 P.R.R. 890, decided in 1950, another complaint for the division of property owned in common under the circumstances of a concubinary relation, whose statement of facts is stated in detail at pages 894–895, we reaffirmed the decision of *Torres* v. *Roldán,* as follows: (p. 896)

". . . In cases of this nature the share of the woman must always be based on the contract entered into, and if such contract does not exist, *on her labor and effort.*" (Italics ours.)

We followed an equal view in the case of *Pereles* v. *Martinó,* 73 P.R.R. 793 (1952), at page 800, even though in the light of its own facts it was provided otherwise.

Finally, in *Danz* v. *Suau,* 82 P.R.R. 591 (1961), after considering the matter once more, it was broken down by a full court, in a more definite manner, as follows: (p. 598)

"As it may be seen, aside from the express agreement proved by the very statements of the decedent—*Pereles* v. *Martinó, supra*—plaintiff has a right to prove said agreement or her right to a particular share in the property, in any of the following ways: (1) as an *express agreement* if it can be proved through the testimony of private persons alien to the concubinary relationship, *Lezcano* v. *Heirs of Sifonte, supra;*[2] (2) as an *implied*

---

[2] Subsequent to the decision in the *Suau* case, § 3 of the Act of March 10, 1904, which provided who were competent witnesses, was repealed on June 21, 1962 by Act No. 84.

*agreement spontaneously* arising *from the human and economic relationship* between the parties during concubinage, *Torres* v. *Roldán, supra;* (3) as an act of justice to prevent the unjust enrichment, recognizing the value of the property, assets or services contributed by the plaintiff and their corresponding profits." (Italics ours.) .

We have carefully examined the record in the light of these principles in force today and in accordance with the evidence, and with said legal principles we cannot accept the view of the trial court, that in this case there did not exist, upon the termination in 1922 of the *more-uxorio* concubinary relation—in distinction from the concubinary relation which could have continued afterwards—economic assets acquired or increased during the marital relation of appellant and the predecessor of appellees through appellant's effort, labor, and industry and of both jointly.

▮▮▮ For the purpose of determining the amount of her proprietary interest, appellant seeks to extend the situation until the very moment of the predecessor's death. We do not agree. This community of interests came to an end when Pablo Landrau contracted marriage with another person. Appellant did not testify that after that date she made any effort together with Landrau to produce capital or increase the capital already produced until that moment. Even when the evidence would tend to show the contrary, as a question of law Landrau could not generate at the same time two different communities of economical interests: the conjugal partnership in his marriage and this other type of common interest in a concubinary relation. We decided it thus in *Reyes* v. *Merlo*, 91 P.R.R. 129 (1964), where speaking for the Court in a case involving also a concubinary relation, we said: (p. 134)

"The acquisition made by Merlo of the rural property of 1.92 *cuerdas* in Ward Santa Rosa as well as the acquisition of the urban property located in Caparra Terrace development are

conjugal property or, at least, must be considered as such in the absence of evidence to the contrary. The concept of 'community of property' between plaintiff Angela Reyes and Alfredo Merlo as such individual, on which the complaint was based, as well as the concept of 'partnership of interest' on which the judgment of the District Court was based—also implied in the decision of the Superior Court—in sustaining the complaint, are extraneous to our civil law and evidently incompatible with the aforementioned sections of the Code. This case is not governed, and cannot be governed, by the rulings laid down in *Danz* v. *Suau*, 82 P.R.R. 591 (1961); *Pereles* v. *Martinó*, 73 P.R.R. 793 (1952); *Pérez* v. *Cruz*, 70 P.R.R. 890 (1950), or *Torres* v. *Roldán*, 67 P.R.R. 342 (1947).

"In relation to property considered as community, except when dealing with separate property or of separate origin, a 'community of property' or a 'partnership of interest' constituted between one of the spouses as such and a stranger to the conjugal partnership, has no place in our juridical order, even in the case of property acquired through personal industry and labor, and even if there exists the typical relationship of concubinage with that stranger.

"The foregoing does not preclude the establishment of a community of property or any juridical entity in relation to property between *the conjugal partnership as such* and a third person. If plaintiff contributed her own money for the acquisition of said community property, she could have a credit or personal claim against the partnership."

On the same grounds, and following by *analogy*, the rulings provided in § 1326 of the Civil Code, 1930 ed., for the liquidation of the hereditary estate when there is more than one conjugal partnership involved, appellant's contention to the effect that her interest should be determined on the basis of the hereditary estate at the death of Pablo Landrau in 1961 does not lie either.

In this aspect the record shows an extremely complex situation, for the reason that the properties acquired during the concubinary relation with appellant were grouped form-

ing other bodies and later were the object of an infinity of other transactions. Neither does the record make it possible for us to conclude now with certainty that appellant's participation in the value of the capital accumulated in 1922 was exactly equal to one half or to a definite portion. Upon remanding the case, we suggest that it is advisable for the parties, with the court's consent and with the assistance of their experts, and on the table of conference to try to fix rationally the amount of that interest, as well as the natural increase that appellant's participation might have had proportionally.

█ This is a case of a division of community of property that, although atypical, has the same purpose, and contemplates the same raison d'être as the division of an orthodox community of property. Section 340 of the Civil Code, 1930 ed., provides that the rules relating to the division of inheritances shall apply to the division amongst part-owners, provided that there is no conflict or incompatibility. *Cf. Saurí v. Saurí et al.*, 39 P.R.R. 461 (1929); *Ruiz v. Ruiz*, 74 P.R.R. 321 (1953); *Shivell v. Barber Boscio*, 92 P.R.R. 387 (1965). And see § 1865 of the Civil Code.

The judgment appealed from will be set aside, and the record will be remanded for further proceedings consistent with the former decisions.